IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**ROBERT ZENAS WHIPPLE, III**
    Plaintiff,

v.

**ROGER ROCHELLE,** TCIX School CCO
**BRANDON IADICICCO,** TCIX School CCO
**REBECCA MILLAY,** TCIX Correctional Principal
**DEBRA JOHNSON,** TCIX Warden
**JOSH PASCHALL,** TCIX Lieutenant
    Defendants.

Civil Action No.: _____

RECEIVED
IN CLERK'S OFFICE
APR 23 2015
U.S. DISTRICT COURT
MID. DIST. TENN.

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
## UNDER TITLE 42 U.S.C., SECTION 1983

### TABLE OF CONTENTS

I. PREVIOUS LAWSUITS: ...................................................................................... 1
II. PLACE OF CURRENT CONFINEMENT: ........................................................ 4
III. PARTIES TO THIS LAWSUIT: .......................................................................... 4
IV. STATEMENT OF YOUR CLAIM: ..................................................................... 7
V. RELIEF REQUESTED: ...................................................................................... 19
VI. CERTIFICATION ............................................................................................... 20

### I. PREVIOUS LAWSUITS:

    A. Have you or any of the other plaintiffs listed above filed any other lawsuits in a United States District Court (Tennessee) and/or in any other state or federal court?
        Yes **X**    No ☐

    B. If your answer YES to Question A, list the following information:

        1. Parties to previous lawsuit:
        Plaintiffs:
        **ROBERT ZENAS WHIPPLE, III**
        Defendants:

| | |
|---|---|
| **DERRICK SCHOFIELD** | **JOHN DOE (S)** |
| **JASON WOODALL** | **DEBRA JOHNSON** |
| **CONSTANCE WARD** | **KEVIN REA** |
| **MARINA CADRECHE** | **OTIS CAMPBELL** |
| | **TIM HANSCHE** |

        2. In what court did you file the previous lawsuit?
        **U.S. District Court, Middle District of Tennessee**

3. Case Number of previous lawsuit:
   **1:13-cv-00109**

4. Name of Judge to whom case was assigned:
   **Senior Judge Haynes**

5. When did you file the previous lawsuit?
   **September 13, 2013**

6. What was the disposition or result of the previous lawsuit?
   **Pending**

7. When was the previous lawsuit decided by the Court?
   **N/A**

8. Did the previous lawsuit involve the same facts or circumstances that you are alleging in the lawsuit you are now submitting?
   Yes ☐     No **X**

C. Second Lawsuit

1. Parties to previous lawsuit:
   Plaintiffs:
   **ROBERT ZENAS WHIPPLE, III**
   Defendants:

   | | |
   |---|---|
   | **REBECCA MILLAY** | **RHONDA WHITT** |
   | **DEBRA JOHNSON** | **JEFF BUTLER** |
   | **DAVID GARY** | **JEFF HUGHES** |
   | **KIM LAKE** | **KIM SIMS** |
   | **BILL HASLAM** | **RETRIEVING** |
   | **DERRICK** | **INDEPENDENCE** |
   | **SCHOFIELD** | **KEVIN TREADWELL** |
   | **ARTHUR** | **JULIA SETZER** |
   | **CROWNOVER** | **CAZZ CROWDER** |
   | **PAMELA LORCH** | **CCO HARRINGTON** |
   | **JASON WOODALL** | **ROGER ROCHELLE** |
   | **DEBRA INGLIS** | **HANNAH CHANDLER** |
   | **DOUGLAS STEPHENS** | |

2. In what court did you file the previous lawsuit?
   **U.S. District Court, Middle District of Tennessee**

3. Case Number of previous lawsuit:
   **1:14-cv-00117**

4. Name of Judge to whom case was assigned:
   **Senior Judge Haynes**

5. When did you file the previous lawsuit?
   **September 3, 2014**

6. What was the disposition or result of the previous lawsuit?
   **Dismissed for failure to state a claim—Appeal pending in 6th Circuit**

7. When was the previous lawsuit decided by the Court?
   **September 25, 2014**

8. Did the previous lawsuit involve the same facts or circumstances that you are alleging in the lawsuit you are now submitting?
   Yes ☐    No **X**

## II. PLACE OF CURRENT CONFINEMENT:

A. Name of prison or jail, in which you are currently incarcerated:
   **Turney Center Industrial Complex ("TCIX")**

B. Are the facts of your lawsuit related to your confinement in your present prison or jail?
   Yes **X**    No ☐

C. If your answer is No to question B, list the name and address of the jail or prison to which the facts of your lawsuit relate:
   **N/A**

D. Do the facts of your lawsuit relate to your confinement in a Tennessee State prison?
   Yes **X**    No ☐

E. If your answer YES to Question D, did you present these facts to the prison authorities through the state prison grievance procedure?
   Yes **X**    No ☐

F. If you answered YES to Question E.

   1. What steps did you take?
      **Plaintiff filed a grievance on 3/31/2015.**

   2. What was the result?
      **The grievance board failed to respond within the seven (7) working-day time limit allowed by TDOC Policy 501.01; therefore, Plaintiff exhausted his administrative remedies.** *Boyd v. Corrections Corp. of America*, **380 F.3d 989, 996 (6th Cir. 2004) "[T]he exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate grievance. To hold otherwise would permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." (internal quotations and citations omitted).**

G. If you answered NO to Question E, Explain why not:
   **N/A**

## III. PARTIES TO THIS LAWSUIT:

A. Plaintiff

   1. Name of Plaintiff:
      **ROBERT ZENAS WHIPPLE, III**

Prison ID Number of Plaintiff:
**399615**

Address of Plaintiff:
**Turney Center Industrial Complex**
**1499 R. W. Moore Memorial Hwy.**
**Only, Tennessee 37140-4050**

B. Defendants

1. Name of First Defendant:
   **ROGER ROCHELLE**

   Place of Employment of First Defendant:
   **Tennessee Department of Correction**

   Address of First Defendant:
   **Turney Center Industrial Complex**
   **1499 R. W. Moore Memorial Hwy.**
   **Only, Tennessee 37140-4050**

   Named in official capacity:      Yes ☐     No ☐
   Named in individual Capacity:    Yes **X**  No ☐

   **Roger Rochelle ("Rochelle") is a Clerical Corrections Officer ("CCO") at the TCIX school. Rochelle was complicit in unlawful retaliation when he carried out an illegal order to issue a false disciplinary charge. Individuals who aid in the implementation of an adverse action at the instructions of a superior will be liable along with their superior if they knew or should have known that the adverse action was unlawful.** *Thaddeus-X v. Blatter,* **175 F.3d 378, 393 (6th Cir. 1999) (holding a subordinate's knowing participation in a superior's retaliatory conduct sufficient to give rise to liability of subordinate who merely executed the unlawful orders).**

2. Name of Second Defendant:
   **BRANDON IADICICCO**

   Place of Employment of Second Defendant:
   **Tennessee Department of Correction**

   Address of Second Defendant:
   **Turney Center Industrial Complex**
   **1499 R. W. Moore Memorial Hwy.**
   **Only, Tennessee 37140-4050**

   Named in official capacity:      Yes ☐     No ☐
   Named in individual Capacity:    Yes **X**  No ☐

   **Brandon Iadicicco ("Iadicicco") is a CCO at the TCIX School. Iadicicco was complicit in unlawful retaliation in that he assisted Defendants Millay and Rochelle in issuing a false disciplinary charge.**

3. Name of Third Defendant:
   **REBECCA MILLAY**

   Place of Employment of Third Defendant:
   **Tennessee Department of Correction**

   Address of Third Defendant:
   **Turney Center Industrial Complex**
   **1499 R. W. Moore Memorial Hwy.**
   **Only, Tennessee 37140-4050**

   Named in official capacity:    Yes ☐    No ☐
   Named in individual Capacity:  Yes **X**  No ☐

   **Rebecca Millay ("Millay") is the Correctional Principal at TCIX. In addition to her educational duties, Millay is responsible for the legal library, notary services, legal photocopy service, and virtually every other aspect of ensuring prisoner access to courts. Millay uses this authority to knowingly and maliciously hinder prisoner access to the law library and the courts. In addition, Millay has personally engaged in retaliatory actions, and ordered subordinate employees to do so as well.**

4. Name of Fourth Defendant:
   **DEBRA JOHNSON**

   Place of Employment of Fourth Defendant:
   **Tennessee Department of Correction**

   Address of Fourth Defendant:
   **Turney Center Industrial Complex**
   **1499 R. W. Moore Memorial Hwy.**
   **Only, Tennessee 37140-4050**

   Named in official capacity:    Yes **X**  No ☐
   Named in individual Capacity:  Yes ☐    No ☐

   **Debra Johnson is the Warden of TCIX. Johnson is responsible to see that the prisoners in her care are treated fairly and lawfully. As Warden, she is responsible for the training of her subordinate staff with regard to proper procedures and standards, which those subordinates are responsible for enforcing among the prisoner population. Her responsibilities include the direct review of lower echelon employees' decisions that prevent prisoners from accessing the courts and subjecting them to retaliation for engaging in protected conduct. In addition, Johnson has created an environment that promotes and even rewards such retaliation for complaints, lawsuits, and grievances.**

5. Name of Fifth Defendant:
   **JOSH PASCHALL**

   Place of Employment of Fifth Defendant:
   **Tennessee Department of Correction**

Address of Fifth Defendant:
**Turney Center Industrial Complex**
**1499 R. W. Moore Memorial Hwy.**
**Only, Tennessee 37140-4050**

Named in official capacity: Yes **X** No ☐
Named in individual Capacity: Yes ☐ No ☐

**Josh Paschall ("Paschall") is a Lieutenant at TCIX. Paschall was complicit in unlawful retaliation in that he assisted Defendants Millay and Rochelle in issuing a false disciplinary charge.**

IV. **STATEMENT OF YOUR CLAIM:**
1. On August 3, 2012, the Tennessee Department of Correction ("TDOC") Commissioner overturned a conviction (#850307) because, "There is no intimidation when an inmate tells an employee he/she is going to file a grievance on that employee or when an inmate tells an employee that he/she will be taking the matter to Federal Court" (Appendix, Pg. 1).

2. This put TDOC and TCIX officials on notice that inmates could not be issued a disciplinary report for exercising their right to file a grievance or lawsuit or stating they would do so.

3. Plaintiff filed more than twenty (20) grievances against Defendant Millay and her staff.

4. Plaintiff filed a lawsuit against Defendant Millay. *Whipple v. Millay,* U.S. Court of Appeals (6th Cir.), Case No. 14–6212.

5. Plaintiff filed a claim regarding fees charged by Defendant Millay that are illegal. *Whipple v. State of Tennessee,* Tenn. Claims Comm., Claim No. T20150055.

6. Plaintiff filed a Title VI complaint against Defendant Millay on November 21, 2014.

7. This Title VI complaint is only now being investigated by TDOC.

8. Counselor Robert Bates interviewed Plaintiff about the Title VI complaint on April 5, 2015.

9. During this interview, Mr. Bates indicated that Defendant Millay has called him numerous times over the past few weeks asking for his "help" on the complaint—in an attempt to influence his investigation.

10. Plaintiff had been assisting a number of prisoners, who have been prejudiced in their cases by inability to access the law library, prepare a class action suit.

11. On March 21, 2015, the plaintiff sent letters to state officials regarding law library issues and warning of the impending class action suit (Appendix, Pgs. 2–3).

12. Plaintiff learned that Defendant Millay was "chewed out" because of these letters.

13. Defendant Millay was also told that she would need to hire her own attorney for the class action because her conduct was willful.[1]

14. Defendant Millay told other staff members she would "get even" for Plaintiff's complaints, grievances, and lawsuits.

15. The law library at TCIX failed to open on time on March 28, 2015.

16. This was the tenth (10th) Saturday in a row that the library failed to open on time.

17. Plaintiff first arrived to the library at 8:00 a.m. (the scheduled opening time).

18. The library was empty at 8:00 a.m.

19. Counselor Kim Sims called to the plaintiff from Operations, which is next door to the library.

20. When Plaintiff walked over to Operations, he observed Defendant Iadicicco (the library officer for that day) lounging about drinking coffee.

21. Lt. Woods told the plaintiff the library was not open and to go back to the unit.

22. When the library later opened, Plaintiff asked the library officer to be sure the sign-in times in the logbook are accurate, as he would be reporting the matter to the courts.

---

[1] T.C.A. § 8-42-103 (a) When a civil action for damages is commenced in any court by any person against any state employee as defined in this chapter for any acts or omissions of the state employee within the scope of the employee's employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain, the attorney general and reporter has the discretion to provide representation to the employee.

23. Two days later, on March 30, 2015, Defendant Rochelle charged the plaintiff with the disciplinary infraction of "Attempting to Intimidate an Employee," alleging that Plaintiff made a threat to "have CCO Brandon Iadicco in Court, suspended, and fired from his job." (Appendix, Pg. 4).

24. Defendant Millay ordered Defendant Rochelle to issue the disciplinary report.

25. Defendants Millay and Rochelle issued the disciplinary charge to "punish" the plaintiff for his complaints, grievances, and lawsuits.

26. Defendant Paschall approved the report, despite the fact that it was clearly contrary to the Commissioner's prior decision. *See* ¶¶ 1–2.

27. On April 1, 2015, Defendant Millay refused to allow plaintiff to photocopy exhibits for a filing to the Sixth Circuit. *See* docket Entry No. 25, *Whipple v. Millay,* U.S. Court of Appeals (6th Cir.), Case No. 14–6212.

28. While the disciplinary charge was pending, Defendant Millay sent word to the plaintiff that if he did not "stop filing grievances on Millay & her staff," she would file additional charges.

29. Due to fear of continued reprisals, Plaintiff has dropped all pending grievances and will no longer assist with the class action suit (*see* Appendix, Pg. 5).

30. Based on his security score and charges, Plaintiff was pre-selected for potential placement to the "annex," a minimum-security area of the prison.

31. On April 6, 2015, Plaintiff met with Chief of Security Harper, Administrative Lt. Clendion, and Classification Coordinator Bruce Coates regarding annex placement.

32. During this meeting, Coates mentioned that Plaintiff had a pending disciplinary and that he would <u>definitely</u> be convicted, so there was no need to send him to the annex.

33. This meeting occurred before any hearings, presentation of evidence, or opportunity for the plaintiff to present a defense.

34. Coates' comment shows he was privy to information that the Disciplinary Board ("D-Board") was biased against the plaintiff and would return a guilty verdict no matter what occurred during the hearing.

35. A member of the D-Board staff told one of the Plaintiff's witnesses, Christopher Holman, that he would lose his job if he testified for Whipple.

36. TDOC Policy provides for an Inmate Advisor to assist at D-Board hearings.

37. Policy defines an Inmate Advisor as, "Inmates appointed by the Warden who serve as advocates for inmates who have been charged with disciplinary infractions." TDOC Policy 502.01 (IV) (G).

38. Plaintiff selected Trey Turner from the list of approved Inmate Advisors to represent him.

39. Turner was diligent in interviewing witnesses and staff.

40. Defendant Iadicicco, when interviewed by Turner, stated that "when an inmate starts talking about filing a grievance or lawsuit, it is time to write them up!"

41. Turner determined that the disciplinary charge was procedurally defective for a number of reasons, to wit:

    42. The disciplinary was issued more than 48 hours after the alleged incident, violating policies requiring issue within 24 hours, unless an investigation is necessary.[2]

    43. No investigation was made into the matter; therefore, the delay in issuing a disciplinary report violated the Uniform Disciplinary Procedures.

44. Defendant Rochelle did not "observe a violation;" he was not even in the library.[3]

45. The disciplinary was a reprisal for complaints, grievances, and lawsuits about Defendant Millay and staff.

46. The formal report does not sufficiently state an offense.

47. The elements of "Attempting to Intimidate an Employee" are: "Attempting to compel an employee to perform or fail to perform some action" and an "Implicit or explicit threat."[4]

48. The first element, was neither alleged nor proven; therefore by policy the charge should have been "dismissed by the board/hearing officer."[5]

49. As to the second element, telling staff they will be taken to court does not qualify (see ¶¶ 1, 2, and 94) and Plaintiff lacks authority to suspend or fire staff so could not have intended to do so; therefore it is not a threat.[6]

50. In order to hinder Plaintiff's defense, Turner was fired as Inmate Advisor.

51. Another Inmate Advisor was appointed shortly before his D-Board hearing, leaving insufficient time to prepare.

52. The newly assigned Inmate Advisor met with Plaintiff for only about five (5) minutes, in the presence of the hearing officer, in order to prepare a defense.

---

[2] TDOC 502.01(VI)(G)(3)—When an alleged rule violation is reported, an appropriate investigation should be initiated **within 24 hours**…
TCIX 502.01-1(VI)(D)(1)—When an employee **observes** a violation of institutional regulations, he/she shall, in all instances take **immediate** corrective action.

[3] TDOC 502.01(VI)(E)—Initiation of Disciplinary Action: When a staff member **observes** a violation of institutional regulations, he/she shall take any of the following actions…

[4] TDOC 502.05(VI)(A)(5)—ATTEMPT TO INTIMIDATE EMPLOYEE (B)—Attempting to compel an employee to perform or fail to perform some action, either by implicit or explicit threat.

[5] TDOC 502.01(VI)(L)(5)(f)

[6] The Oxford dictionary defines threat as a "declaration of an **intention** to punish or harm" (emphasis added).

53. This last-minute change of advisors prevented the plaintiff form obtaining and introducing exculpatory evidence at his hearing.

54. The newly assigned Inmate Advisor did not investigate the facts or assist in the preparation of a defense.

55. A disciplinary hearing was convened on April 17, 2015.

56. At the hearing, Defendant Rochelle admitted he did not observe the violation, that he was not even at work that day, and that the Plaintiff cannot fire or suspend Defendant Iadicicco.

57. At the hearing, Defendant Iadicicco stated that he wanted Plaintiff wrote up because "he was talking about filing a grievance and stuff."

58. Despite repeated questioning, Defendant Iadicicco never alleged that plaintiff said he'd "have CCO Brandon Iadicco in Court, suspended, and fired from his job."

59. Defendant Iadicicco never alleged during the hearing that Plaintiff said he would have him suspended or fired.

60. At the hearing, Plaintiff called three witnesses that were present in the library that day.

61. All three witnesses corroborated Plaintiff's assertion that he never said he would "have CCO Brandon Iadicco in Court, suspended, and fired from his job."

62. At the hearing, witness Christopher Holman testified that he was warned he would lose his job if he testified for Whipple.

63. At the hearing, Plaintiff was not permitted the opportunity to present his side of events, denying due process. While Plaintiff was making his statement, the D-Board chair cut short his statement saying, "we have to move this along."

64. At the conclusion of the hearing, the D-Board chair advised the plaintiff he would call him back to the D-Board office that afternoon with their decision.

65. The D-Board chair did not call the plaintiff back to the office as he said he would.

66. Plaintiff was denied due process because he was not presumed innocent at the hearing in violation of Uniform Disciplinary Procedures.[7]

67. Plaintiff was denied due process because the D-Board had prejudged his case, in advance of hearing any evidence.

68. Plaintiff was denied due process because an unauthorized D-Board was convened in that board member Johnny Qualls serves as the Inmate Job Coordinator. Plaintiff lost his job as a result of the disciplinary; therefore, there is a conflict of interest.

69. Plaintiff was denied due process in that he was given no fair notice of what conduct would constitute the disciplinary offense of "Attempting to Intimidate an Employee."

70. Plaintiff has been aware of the commissioner's ruling (see ¶ 1) for quite some time.

71. Based on this ruling, Plaintiff believed he would not be committing any offense by mentioning grievances or court.

72. If the prior ruling of the Commissioner no longer stands, the inmate population should have been properly notified.

73. "Due process requires that inmates receive fair notice of a rule before they can be sanctioned for its violation." *Forbes v. Trigg*, 976 F.2d 308, 314 (7th Cir. 1992)

74. After the hearing, two agents from the TDOC Commissioner's office interviewed the Plaintiff.

75. During the interview, the agents advised the plaintiff that he would be forced to transfer to another prison because of his complaints, grievances, and lawsuits.

---

[7] TDOC 502.01(VI)(L)(4)(k)

76. Shortly after the interview, Classification Coordinator Bruce Coates hand-delivered a message to the Plaintiff.

77. The message read, "You will meet the reclass board on Monday, April 20 for transfer to another TDOC prison."

78. The D-Board did not disclose its' ruling to the Plaintiff.

79. On Saturday, April 18, 2015, inmate Grenda Harmer told the Plaintiff that they had "crossed you out" and that he would "go to the hole on Monday."

80. This was the first Plaintiff heard about the disposition of the disciplinary.

81. The D-Board failed to provide the plaintiff with a written statement, summarizing the evidence and stating detailed reasons for the D-Board's decision in violation of Uniform Disciplinary Procedures.[8]

82. TDOC policy requires that a copy of the hearing summary be given to the inmate, rather than spread the word through the inmate "grapevine."[9]

83. The D-Board found Plaintiff guilty and sentenced him to ten (10) days punitive segregation, $4.00 fine, nine (9) months package restriction, transfer to another facility, and the loss of his job.

84. Plaintiff worked in a Prison Industries Enhancement (PIE) program from January 5, 2015 until April 17, 2015. After mandatory deductions, he made between $228.54 and $628.78 per month.

85. The board's decision to find Plaintiff guilty runs counter to explicit policy requiring that "a disciplinary report which fails to adequately state an offense…shall be dismissed by the board/hearing officer."[10]

---

[8] TDOC 502.01(VI)(L)(4)(n)

86. The D-Board acted arbitrarily, capriciously, and illegally in that they failed to comply with the Uniform Disciplinary Procedures (TDOC 502.01).

87. On April 18, 2015, Plaintiff sent his *Application to Proceed In Forma Pauperis and Affidavit of Poverty* to the trust fund office with a post it note attached to the final page requesting them to "Please fill this out & attach a 6-month printout." (*see* Appendix, Pg. 6).

88. Plaintiff received the form back on April 21, 2015. The form was not completed, no six month printout was attached, and another post it note was attached which read, "Need to get an official document from Unit Staff." (*see* Appendix, Pg. 6).

89. That same day, Plaintiff asked the officer in the unit for an "official document" to verify his trust fund balance and get a six-month printout for court. He replied that he does not have any forms like that and has never heard of any.

90. Plaintiff also asked Defendant Iadicicco for the "official document" and was again told no such form exists.

91. Both officers refused to verify his trust fund balance or provide a six-month printout for court.

92. By refusing to verify Plaintiff's trust fund balance and provide a six-month printout, TCIX staff are interfering with access to the courts.

93. The actions of Defendants Rochelle, Millay, and Iadicicco were willful, malicious, and criminal; as such, the state Attorney General's office is not permitted to defend them[11] nor can the pay any final judgement on their behalf.[12]

---

[9] TDOC 502.01(VI)(L)(4)(o)
[10] TDOC 502.01(VI)(L)(5)(f)
[11] T.C.A. § 8-42-103
[12] T.C.A. § 9-8-112

94. While threats are not constitutionally protected under the First Amendment, A "threat" to take a constitutionally protected action is itself constitutionally protected. *See Cavey v. Levine,* 435 F.Supp. 475, 481-83 (D.Md. 1977) (prisoner could not be punished for threats to write to the press about an inmate suicide), *aff'd sub nom. Cavey v. Williams,* 580 F.2d 1047 (4th Cir. 1978); *see also Hargis v. Foster,* 312 F.3d 404, 411 (9th Cir. 2002) (holding that a disciplinary conviction for "coercion" for mentioning pending litigation to an officer presented a jury question as to reasonableness). One court held that a rule forbidding prisoners to threaten employees with litigation during "confrontation situations" was unconstitutional, but on rehearing the court held that it could not decide the case because loss of good time was involved and the prisoner had not gotten the disciplinary conviction overturned in a state proceeding or via federal habeas corpus. *Clarke v. Stalder,* 121 F.3d 222, 228-31 (5th Cir. 1997), *on rehearing,* 154 F.3d 186 (5th Cir. 1998) (en banc).

95. "A prisoner seeking judicial review of a prison disciplinary proceeding states a claim for relief under common-law writ of certiorari if the prisoner's complaint alleges facts demonstrating that the D-Board failed to follow the Uniform Disciplinary Procedures and this failure substantially prejudiced the petitioner." *Willis v. TDOC,* 113 S.W.3d 706, 713 (Tenn. Ct. App. 2003).

96. "It is well-settled that the freedom to criticize public officials and expose their wrongdoing is a fundamental First Amendment value, indeed, criticism of the government is at the very center of the constitutionally protected area of free discussion." *Arnett v. Myers,* 281 F. 3d 552, 560 (6th Cir. 2002) [Internal quotation marks & brackets omitted] "A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Retaliation based upon a

prisoner's exercise of his or her constitutional rights violates the Constitution." *Smith v. Campbell,* 250 F. 3d 1032, 1036 (6th Cir. 2001) The Supreme Court has explained: "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton,* 523 U.S. 574, 588 n. 10, 118 S. Ct. 1584 (1998).

97. Unlike an independent right of access claim, a retaliation claim does not require a showing that the plaintiff was actually inhibited or deterred from pursuing a legal action. Rather, an "adverse action" is defined as one which "is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X,* 175 F.3d at 398. "*Actual* deterrence need not be shown." *Harbin-Bey v. Rutter,* 420 F.3d 571, 579 (6th Cir. 2005) (emphasis in original) (citation omitted). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Pasley v. Conerly,* 345 Fed.Appx. 981, 985 (6th Cir. 2009). In discussing the level of action or threat necessary to deter a person of ordinary firmness, the *Thaddeus-X* court emphasized that this element is not an overly difficult one for the plaintiff to meet:

> "We emphasize that while certain threats or deprivation are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions...." *Thaddeus-X* 175 F.3d at 398.

Moreover, because "there is no justification for harassing people for exercising their constitutional rights," the deterrent effect of the adverse action need not be great in order to be actionable. *Id.* at 397 (citation and internal quotation marks omitted)

98. "To state a claim for relief under §1983 for a First Amendment retaliation claim, a plaintiff must show that: (1) the plaintiff engaged in protected conduct, (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to

engage in that conduct, and (3) there is a casual connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *King v. Zamiara,* 680 F. 3d 686, 694 (6th Cir. 2012) (quoting *Thaddeus-X* 175 F.3d at 394). "Moreover, the plaintiff must be able to prove the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith* 250 F. 3d at 1037.

99. Plaintiff was engaged in protected conduct.
100. A person of ordinary firmness would be deterred from continuing to engage in protected conduct, in the face of disciplinary charges that resulted in the loss a high-paying prison job, reclassification to a higher security level, and a retaliatory transfer.
101. It is particularly important that the court penalize the defendants for their unlawful retaliation in that it is well known among the inmate population that Plaintiff has filed a number of complaints, grievances, and lawsuits on staff.
102. To hold otherwise would "offend[] the Constitution [in] that it threatens to inhibit exercise of the protected right", because other prisoners would be fearful of reprisal and be unlikely exercise their civil rights. *Crawford-El,* 523 U.S. at 588.
103. "Government actions which, standing alone, do not violate the Federal Constitution may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional rights" *Thaddeus-X v. Blatter,* 175 F.3d 378, 386 (6th Cir. 1999).

104. "Circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate evidence to establish motive for purposes of retaliation claim." *Id.*

105. Unlawful retaliation can be inferred from the following facts:

- the chronology of events;

- that Plaintiff was not permitted a fair hearing (due to witness coercion, firing his Inmate Advisor, deciding the result ahead of a hearing, not allowing him to make his statement), denying due process.

- that Defendant Rochelle (who is a defendant in the prior action) chose to initiate a disciplinary while Defendant Iadicicco (who is not a party to any of Plaintiff's litigation—until the instant case) did not;

- that the disciplinary alleges actions that are constitutionally protected, and is void on its' face; and

- that the disciplinary runs counter to the explicit ruling of the TDOC Commissioner.

## V. RELIEF REQUESTED:

A. Issue a declaratory judgment stating that defendants' actions violated the plaintiff's civil rights.
B. Issue an injunction ORDERING defendants to:
  1. Refrain from engaging in any further retaliatory actions.
  2. Remove all references to the Disciplinary Charge from Plaintiff's Institutional Inmate Record, including electronic data.
  3. Restore Plaintiff's package ordering privileges.
  4. Reinstate Plaintiff to his position in the PIE program in the Tricor-CPG Woodplant.
C. Order Defendants Millay, Rochelle, and Iadicicco to pay compensatory damages, including but not limited to, lost wages.
D. Order Defendants Millay, Rochelle, and Iadicicco to pay punitive damages.

E.  Grant such other relief as it may appear that plaintiff is entitled.

F.  I request a jury trial    Yes X    No ☐

## VI. CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed this 21st day of April, 2014

*[signature]*

Robert Z. Whipple, III #399615
Turney Center Industrial Complex
1499 R. W. Moore Memorial Hwy.
Only, Tennessee 37140-4050