IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

ROBERT ZENAS WHIPPLE, III      )
      )
      v.      )      NO. 1:15-0040
      )
ROGER ROCHELLE, et al.      )


TO:  Honorable Waverly D. Crenshaw, Jr., Chief District Judge


# R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered May 15, 2015 (Docket Entry No. 10), the Court referred this action to the
Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Rule 72(a) and (b) of the
Federal Rules of Civil Procedure, for pretrial proceedings.

Pending before the Court is Plaintiff's motion for partial summary judgment (Docket Entry
No. 158) and Defendants' motion for summary judgment (Docket Entry No. 201).  For the reasons
set out below, the undersigned respectfully recommends that Plaintiff's motion be denied and
Defendants' motion be granted.


## I.  PROCEDURAL BACKGROUND

Robert Z. Whipple, III ("Plaintiff"),  is an inmate of the Tennessee Department of Correction
("TDOC") currently confined at the Bledsoe County Correctional Complex ("BCCX") in Pikeville,
Tennessee.  He filed this lawsuit *pro se* and *in forma pauperis* on April 23, 2015, seeking
declaratory, injunctive, and monetary relief under 42 U.S.C. § 1983 for violations of his
constitutional rights alleged to have occurred while he was confined at the Turney Center Industrial

Complex ("Turney Center") in Only, Tennessee. Plaintiff's original pleading asserted claims of retaliation and due process violations based upon events occurring in March and April of 2015 when he was issued a prison disciplinary report for "attempting to intimidate an employee" and was subsequently convicted of a disciplinary charge. He alleged that the disciplinary report and conviction were acts of retaliation against him because he exercised his First Amendment rights by filing lawsuits, complaints, and prison grievances. He further alleged that the disciplinary process was fraught with procedural irregularities and due process violations and that his guilt on the charge was predetermined before the disciplinary hearing actually occurred. *See* Complaint (Docket Entry No. 1).

In its initial screening of the Complaint, the Court found that Plaintiff had alleged colorable constitutional claims against Turney Center Correctional Officers Roger Rochelle ("Rochelle") and Brandon Iadicicco ("Iadicicco"), Turney Center Correctional Lieutenant Josh Paschall ("Paschall"), Turney Center Correctional Principal Rebecca Millay ("Millay'), and Turney Center Warden Debra Johnson ("Johnson"). *See* Order entered May 5, 2015 (Docket Entry No. 5). Pretrial activity began, and Defendant Johnson was subsequently dismissed from the action pursuant to her motion to dismiss. *See* Order entered December 21, 2015 (Docket Entry No. 85).

On March 1, 2016, Plaintiff was granted leave to amend his complaint to add as defendants Turney Center Disciplinary Board members Daniel Epley ("Epley") and Johnny Qualls ("Qualls"), Turney Center Classification Coordinator Bruce Coates ("Coates"), and TDOC Special Agents Nathan Miller ("Miller") and Ramon Sherrell ("Sherrell"). *See* Orders entered March 1, 2016 (Docket Entry No. 100), and July 22, 2016 (Docket Entry No. 131). In his Amended Complaint (Docket Entry No. 139), Plaintiff expounded on his original allegations of retaliation and intimated

that his transfer from the Turney Center to BCCX in April 2015 was a further act of retaliation against him.

By contemporaneously entered Orders, the undersigned has addressed several nondispositive motions recently filed by Plaintiff. Extensive pretrial activity has occurred pursuant to scheduling orders, *see* Docket Entry Nos. 99 and 133, and all pretrial deadlines have expired. The parties demand a jury for any claims that proceed to a trial

## II. FACTUAL BACKGROUND

The fundamental facts of this case are summarized from the record as follows. Plaintiff has a history of filing lawsuits and claims against prison staff, pursuing prison grievances, and writing letters to prison officials and others. *See* Defendants' Response to Plaintiff's Statement of Undisputed Facts (Docket Entry No. 204) at ¶¶ 1-5. While at the Turney Center, Plaintiff specifically directed some of his activities toward School Principal Millay, filing more than 20 grievances against her and her staff, naming her in lawsuits, and filing a Title VI complaint against her. *Id.*; Amended Complaint at ¶¶ 3-6. Plaintiff contends that his actions caused Millay to harbor animosity toward him.

At the Turney Center, Plaintiff protested the operation of the prison's law library. *See* Affidavit of Heather Davidson (Docket Entry No. 202-1) at ¶¶ 8-13 and attachments. On March 28, 2015, the library failed to open at its scheduled opening time of 8:00 a.m., and Plaintiff had a conversation later that day about the issue with Officer Iadicicco, who was working the library that day. The content of the conversation is disputed by the parties. Plaintiff asserts that he asked Iadicicco "to be sure the sign-in times in the logbook are accurate, as he would be reporting the

matter to the courts." *See* Amended Complaint at ¶ 22. In contrast, Iadicicco asserts that Plaintiff threatened to have him fired/suspended from his job, causing Iadicicco to log the incident into the daily log book and contact Millay about the matter. *See* Affidavit of Iadicicco (Docket Entry No. 202-3) at ¶¶ 7-9.

Two days later, Correctional Officer Rochelle was asked by Millay to review the library log book when Rochelle began his work shift in the library that day. *See* Affidavit of Rochelle (Docket Entry No. 202-4) at ¶¶ 2-4. After reviewing the entry made about the incident by Officer Iadicicco, Rochelle issued Plaintiff a prison disciplinary report on March 30, 2015, for the charge of "attempt to intimidate employee" *Id*. at ¶ 6. Prior to issuing the report, Rochelle checked with the lieutenant on duty, Lieutenant Paschall, to make sure it was okay to issue the report, and Paschall approved the report. *See* Rochelle Affidavit at ¶ 7. The disciplinary report states:

> On 3-28-2015 at approximately 8:20 am inmate Robert Whipple 399615 arrived in the library and made a threatening statement. Stating he will have CCO Brandon Iaddicco in court, suspended, and fired from his job. For Robert Whipple 399615 not being in the library at exactly 8:00 am CCO Brandon Addicco recorded this event in the log book and reported it to Rebecca Millay on 03-28-2015 approximately 2:07 pm. Upon reviewing the logbook I CCO Roger Rochelle am charging Robert Whipple 300615 with attempt to intimidate employee. Lt. Josh Paschall approved.

*See* Docket Entry No. 237-1 at 2 (quoted exactly as in original).

Plaintiff alleges that Millay ordered Rochelle to issue the disciplinary report as a form of reprisal against Plaintiff for his complaints, grievances, and lawsuits. *See* Amended Complaint at ¶¶ 24-25. He further alleges that Millay "sent word" to Plaintiff to stop filing grievances or she would file additional disciplinary charges against him. *Id.* at ¶ 28. Defendants dispute these allegations.

No additional disciplinary charges were filed against Plaintiff, but he had a disciplinary hearing on April 17, 2015, on the charge issued by Rochelle, was convicted of the disciplinary offense, and was issued a punishment consisting of ten days of punitive segregation, a $4.00 fine, nine months of package restrictions, transfer to another facility, and the loss of his prison job. *Id*. at ¶ 83; Docket Entry No. 237-1. Plaintiff appealed the disciplinary conviction, and on April 23, 2015, Warden Johnson overturned the conviction and dismissed the charge. *See* Exhibits to Plaintiff's Declaration (Docket Entry No. 160) at 15; Plaintiff's Deposition Transcript (Docket Entry No. 219-1) at 89 and 92.

On the same day as Plaintiff's disciplinary hearing, he was interviewed by TDOC Special Agents Miller and Sherrell about his expressed dissatisfaction with the Turney Center. *See* Affidavit of Sherrell (Docket Entry No. 202-5); Transcript of Interview (Docket Entry No. 202-6); TDOC Investigative Report (Docket Entry No. 160) at 30. Matters discussed during the interview included, among others: the operation of the Turney Center law library; Principal Millay; Plaintiff's grievances, lawsuits, and other complaints; Plaintiff's inmate job; other TDOC facilities where Plaintiff could be housed; and, Plaintiff's disciplinary charge and the possibility of having it dismissed. *See* Interview Transcript. Plaintiff thereafter underwent a reclassification hearing on or about April 20, 2015, and was transferred to the BCCX on April 22, 2015. *See* Affidavit of Patricia Speck (Docket Entry No. 202-2) at ¶ 4. Within six weeks of his transfer to the BCCX, Plaintiff had been placed in a prison job paying the same wage as his prior job at the Turney Center. *See* Plaintiff's Response to Defendants' Statement of Undisputed Facts (Docket Entry No. 236) at 14-15, ¶ 21.

### III. MOTIONS FOR SUMMARY JUDGMENT

By his motion for partial summary judgment, Plaintiff seeks summary judgment on the issue of Defendants' liability for his retaliation claim.  *See* Docket Entry No. 158.  He contends that the undisputed evidence before the Court satisfies all elements necessary to show that he suffered unconstitutional retaliation when he was issued the disciplinary report and when he was transferred from the Turney Center.  In support of his motion, Plaintiff relies upon his own Declaration (Docket Entry No. 160), written discovery responses from Defendants (Docket Entry Nos. 152-3 to 152-9), various exhibits attached to his Declaration (Docket Entry No. 160 at 4-84), and a Statement of Undisputed Facts (Docket Entry No. 161).

Defendants seek summary judgment in their favor on all claims raised by Plaintiff.  *See* Docket Entry No. 201.  Defendants contend that Plaintiff failed to comply with the exhaustion requirement of the Prison Litigation Reform Act.  Defendants further argue that the undisputed material facts show that Plaintiff's due process and retaliation claims lack merit.  Defendants Epley, Qualls, Coates, and Paschall assert that they have been sued in only their official capacities for the purposes of injunctive relief but that Plaintiff's request for injunctive relief has become moot in light of his transfer from the Turney Center.  Finally, Defendants Millay, Rochelle, Iadicicco, Miller, and Sherrell raise the defense of qualified immunity from any liability for monetary damages.  In support of their motion, Defendants rely upon: a Statement of Undisputed Facts (Docket Entry No. 202); the affidavits and attached exhibits of Turney Center Grievance Chairperson Heather Davidson (Docket Entry No. 202-1) and BCCX Grievance Sargeant Patricia Speck (Docket Entry No. 202-2); the affidavits of Defendants Iadicicco (Docket Entry No. 202-3), Rochelle (Docket Entry No. 202-4),

and Sherrell (Docket Entry No. 202-5); the transcript of Plaintiff's April 17, 2015, interview (Docket Entry No. 202-6), and Plaintiff's deposition testimony (Docket Entry No. 219-1).[1]

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unlike ruling on a motion to dismiss, in considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant

---

[1] As set out in a contemporaneously entered Order, the undersigned has denied Plaintiff's motion (Docket Entry No. 212) to strike his deposition in order to prevent it from being used by Defendants as evidence supporting their motion for summary judgment.

probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to **material** facts ... [.] Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. (citations omitted) (emphasis added).

## V. CONCLUSIONS

The Court has reviewed the lengthy record in this action, the evidence filed by the parties in support of and in opposition to summary judgment, and the parties' legal arguments. After engaging in this review, it is apparent that critical legal deficiencies exist with respect to some aspects of Plaintiff's lawsuit that entitle Defendants to summary judgment on certain claims. *Infra* at Section V(A). It is also apparent that some factual disputes exist. However, these disputes do not rise to the

level of genuine issues of material fact that require resolution at trial, and Defendants are entitled to summary judgment in their favor as to all claims.

A. Official Capacity Defendants, Injunctive and Declaratory Relief, and Due Process Claim

Summary judgment is warranted in favor of all Defendants to the extent that monetary damages are sought against any Defendant named in his or her official capacity. Such damages are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Turker v. Ohio Dept. of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998).

Summary judgment is warranted in favor of Defendants Epley, Qualls, Boates, and Paschall, who are all sued in only their official capacities. Although the Eleventh Amendment does not bar claims for injunctive relief against a state official sued in his official capacity, Plaintiff no longer has live claims for injunctive relief. Plaintiff seeks injunctive relief in the form of the "remov[al] of all references to the Disciplinary Charge from Plaintiff's Institutional Inmate Record." *See* Amended Complaint at 20, Section V(B). However, Plaintiff has already obtained the requested relief pertaining to the disciplinary charge. *See* Report and Recommendation entered January 4, 2017 (Docket Entry No. 174); Order entered January 6, 2017 (Docket Entry No. 175); Plaintiff's Deposition (Docket Entry No. 219-1) at 156-57. Plaintiff also seeks an order requiring Defendants to "refrain from engaging in any further retaliatory actions." *See* Amended Complaint at 20, Section V(B). However, Plaintiff is no longer confined at the Turney Center. His transfer from the Turney Center renders moot his request for a prospective order prohibiting future conduct by Turney Center employees. *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Plaintiff's arguments that he has viable claims for prospective injunctive relief

against these Defendants based upon events that have recently occurred at the BCCX and because his claims are capable of repetition, yet evade review, *see* Plaintiff's Response in Opposition (Docket Entry No. 236-2) at 12, are entirely unpersuasive to the Court.

Summary judgment is further warranted in favor of all Defendants on Plaintiff's Fourteenth Amendment Due Process claim. Prison disciplinary procedures do not themselves create an interest protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In order to implicate the procedural protections of Due Process with respect to prison disciplinary proceedings, Plaintiff must show that he suffered a punishment that rose to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id*. at 484. Plaintiff cannot satisfy this showing. The undisputed evidence shows that the disciplinary conviction was overturned and that Plaintiff suffered no punishment as a result of the initial disciplinary conviction, let alone a punishment that rose to the level of an atypical and significant hardship in relation to the ordinary incident of prison life. Indeed, Plaintiff concedes in his response to Defendants' motion that he fails to set forth a viable Due Process claim. *See* Plaintiff's Response in Opposition at 18.

B. Exhaustion of Administrative Remedies as to Plaintiff's Retaliation Claims

Pursuant to Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies before brining a claim to court. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). If there is a grievance procedure available to inmates, to satisfy the exhaustion requirement, the prisoner plaintiff must present his grievance

through "one complete round" or through all the steps of the administrative grievance procedure. *See Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The failure of a prisoner plaintiff to satisfy the exhaustion requirement is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

### 1. Retaliatory Disciplinary Charge Claim

Defendants contend that, although Plaintiff filed many grievances while at the Turney Center, there is no record that he filed a grievance related to the events of March 28, 2015, and the alleged retaliatory disciplinary report. *See* Defendants' Memorandum in Support (Docket Entry No. 203) at 6-9. Thus, Defendants argue that Plaintiff failed to exhaust any administrative remedies with respect to the retaliatory disciplinary charge claim. *Id.*

In response, Plaintiff asserts that he filed a grievance on March 31, 2015, complaining that the disciplinary write-up from Defendant Rochelle was retaliatory and implicating Defendants Millay and Iadicicco in the retaliation but that he never received a response to the grievance. *See* Plaintiff's Deposition (Docket Entry No. 219-1) at 52-55 and Exhibit 1. Defendants, on the other hand, assert that there is no record of such a grievance ever being filed and that the copy of the grievance provided by Plaintiff during his deposition bears no notations or markings indicating that it was ever actually filed. *See* Defendants' Memorandum in Support at 8; Affidavit of Heather Davidson (Docket Entry No. 202-1) at ¶ 15. Plaintiff counters that inmate grievances are frequently lost, misplaced, or not responded to by prison officials. *See* Plaintiff's Response in Opposition (Docket Entry No. 236-2) at 8-9.

A disputed factual issue exists as to whether Plaintiff actually filed the March 31, 2015, grievance. Both parties have submitted evidence on this issue which, if believed, would support their position. In the context of a summary judgment motion, the Court cannot make a credibility determination and resolve the factual issue that is in dispute. Such a finding would require an evidentiary hearing by the Court. *See Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) (factual issues pertaining to exhaustion under the PLRA may be decided by the Court and are not required to be submitted to a jury). Accordingly, summary judgment cannot be granted to Defendants based on their contention that Plaintiff failed to file a grievance about the alleged retaliatory disciplinary report.

Defendants next argue that, even it is assumed that Plaintiff filed the March 31, 2015, grievance as he alleges, it is undisputed that, on April 15, 2015, Plaintiff withdrew, in writing, any and all grievances that he had pending at the Turney Center. *See* Appendix 5 to Complaint (Docket Entry No. 1-1 at 5); Plaintiff's Deposition (Docket Entry No. 219-1) at 129-130. Defendants contend that Plaintiff's act of withdrawing his grievances "would negate any factual possibility that he appealed through all available levels and fully exhausted his administrative remedies." *See* Defendants' Memorandum in Support at 9.

Plaintiff's response is two-fold. First, he argues that the grievance process at the Turney Center was effectively unavailable because: 1) monetary compensation cannot be awarded; 2) prison officials "make a habit of 'losing' grievances" filed by inmates; and 3) he withdrew his pending grievances only after being intimidated and verbally threatened with additional disciplinary reports if he pursued his grievances. *See* Plaintiff's Response in Opposition at 10-11. He further argues that, in accordance with *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004),

"administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Id*. He contends that Defendants cannot rely on his withdrawal of his pending grievances on April 15, 2015, because prison officials had failed to timely respond to his March 31, 2015, grievance and his grievance was, thus, deemed exhausted as per *Boyd* prior to April 15, 2015.

Two of Plaintiff's responses are readily rejected. It is well settled that a prisoner's inability to obtain monetary relief through an administrative grievance process does not render the grievance process unavailable or excuse a prisoner's failure to exhaust under the PLRA. *Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Further, Plaintiff's contention that prison officials "lose" grievances is misplaced at this point in the argument because the Court assumes for the purposes of summary judgment that Plaintiff's March 31, 2015, grievance was filed as he alleges.

Plaintiff's contention that he was threatened with additional disciplinary reports if he continued to pursue grievances at the Turney Center and was, thus, intimidated into withdrawing all of his pending grievances is less readily rejected, but nonetheless fails to provide him with relief from the PLRA's exhaustion requirement given the facts of this action. As Plaintiff points out in his Response in Opposition, when prison administrators thwart an inmate from taking advantage of a grievance process through machination, misrepresentation, or intimidation, the grievance process at issue is deemed unavailable and the defense of failure to exhaust under the PLRA poses no bar to the inmate's claim. *Ross v. Blake*, __U.S.__, 136 S. Ct. 1850, 1860, 195 L. Ed. 2d 117 (2016). In his pleadings, Plaintiff made an allegation that Defendant Millay had "sent word" to Plaintiff that she would file additional charges against him if he did not stop filing grievances on her and her staff. *See* Amended Complaint at ¶ 28. Although Plaintiff was clearly aware of the pertinent information

about this incident at the time of filing his original pleading, he curiously failed to identify the person or persons who "sent word" to him of this threat in his pleading. In his deposition, however, he testified that it was Defendants Rochelle and Iadicicco who came to him on April 14 or 15, 2015, and told him that he needed to "back off and stop filing all these grievances or they – you know– you know, or I'd be written up and even said – mentioned I might be maxed out." *See* Plaintiff's Deposition at 127-130. Accordingly, Plaintiff has put evidence into the record which he contends supports his assertion that the Turney Center grievance process was not available to him under the holding in *Ross v. Blake*.

This evidence would appear at first to be sufficient to create a genuine issue of material fact that would be sufficient to warrant denial of Defendants PLRA exhaustion defense as to this claim. However, even if the Court takes Plaintiff's evidence as true for the purposes of resolving the summary judgment motion, the undisputed evidence nonetheless shows that Plaintiff had already abandoned the grievance process as to this claim prior to the alleged threat and his subsequent withdrawal of all of his pending grievances. Plaintiff contends that he filed his grievance about the disciplinary report on March 31, 2015, and argues that this grievance became effectively exhausted under *Boyd* when prison officials failed to timely respond to the grievance within seven days as required by the TDOC grievance policy. *See* Plaintiff's Response to Statement of Undisputed Facts (Docket Entry No. 236) at ¶ 8. Indeed, Plaintiff acknowledged in his deposition that he did nothing further to pursue this grievance after filing it, believing that *Boyd* relieved him of any further obligation to pursue the grievance once prison officials did not respond. *See* Plaintiff's Deposition at 131 and 136.

Plaintiff reads the decision in *Boyd* too broadly. While the Sixth Circuit in *Boyd* found that an inmate satisfied the exhaustion requirement under the PLRA because prison officials had not timely responded to his grievance, the inmate in *Boyd* did not have the ability to pursue an administrative grievance appeal under the applicable process until he received a response to his initial grievance. *Boyd*, 380 F.3d at 996. Thus, the inmate in *Boyd* was foreclosed by the applicable grievance policy from proceeding further based upon the prison official's failure to respond to his grievance. In the instant case, however, no such bar exists. TDOC Policy #501.01, Inmate Grievance Procedures, specifically provides that "[if] a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process." Policy #501.01VI(D).[2] Thus, when the seven day period for Plaintiff to receive a response to the first level of his grievance expired without a response, the next step in the grievance process, pursing a grievance appeal, was available to Plaintiff, yet he chose to do nothing.

Full and proper exhaustion under the PLRA requires compliance with the applicable terms of the grievance procedure that is at issue. *Bock*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-91. When a grievance procedure provides a mechanism whereby the inmate can continue to pursue a grievance even if he has not received a response from prison officials to his initial grievance, the inmate cannot abandon the grievance process prior to its completion merely because of the lack of a response. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *Perkins v. Nashville Sheriff Dept.*, 2015 WL 4752620 (M.D. Tenn. Aug. 10, 2015) (Trauger, J.) (inmate failed to comply with

---

[2] The Court takes judicial notice of TDOC policies as posted on the TDOC's public website, http://www.tn.gov/correction/article/tdoc-policies-and-procedures. *See Shelton v. Jordan*, 2017 WL 1653581 at *3 n.1 (M.D. Tenn. May 2, 2017) (Trauger, J.) ("District courts may take judicial notice of published governmental policies and procedures.")

PLRA when inmate abandoned any attempt to follow up on his grievances or to appeal after not receiving a timely response). Accordingly, Plaintiff's decision to do nothing when he did not receive a response to his initial grievance instead of pursuing an available appeal to the next grievance step constitutes an abandonment of the grievance process. Neither *Ross* nor *Boyd* provide Plaintiff with any relief from the PLRA exhaustion requirement under the facts of this action. Summary judgment should be granted to Defendants on this claim because Plaintiff failed to properly exhaust it prior to filing his lawsuit.

### 2. Retaliatory Transfer Claim

Defendants acknowledge that Plaintiff filed a grievance on April 30, 2015, while at the BCCX asserting that his transfer from the Turney Center to the BCCX was retaliatory and implicating Defendant Millay and another prison official who is not named as a Defendant. *See* Defendants' Memorandum in Support (Docket Entry No. 203) at 9; Affidavit of Patricia Speck (Docket Entry No. 202-2) at ¶ 7. Defendants do not offer any actual argument as to why Plaintiff has not met the PLRA's exhaustion requirement as to this claim. Accordingly, the retaliatory transfer claim shall be deemed to be exhausted under the PLRA.

### C. Retaliatory Transfer Claim

Summary judgment is warranted in favor of Defendants Rochelle, Iadicicco, and Millay on this claim because there is no evidence before the Court showing that they had any involvement in Plaintiff's transfer from the Turney Center to BCCX. A defendant cannot be held liable under 42 U.S.C. § 1983 absent a showing that the defendant was personally involved in some manner in

the unconstitutional conduct. *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992). There must be evidence that a defendant personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee*, *supra*; *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Plaintiff has offered no evidence supporting a finding of the personal liability of any of these three Defendants on this claim. Indeed, he appears to acknowledge that Defendants Rochelle and Iadicicco were involved in only his retaliatory disciplinary charge claim, *see* Plaintiff's Response to Statement of Undisputed Facts (Docket Entry No. 236) at ¶¶ 31 and 33, and his contention that he intends to develop supporting facts against Defendant Millay by questioning Defendants at trial, *id.* at ¶ 36, is a wholly insufficient basis upon which to establish genuine issues of material fact on this issue that require the denial of summary judgment.

The final two Defendants on this claim are Defendant Miller and Sherrell. Plaintiff alleges that they bear personal liability for what he contends was his retaliatory transfer away from the Turney Center. It is undisputed that these two Defendants interviewed Plaintiff in response to his grievances about Turney Center staff, openly discussed his grievances, lawsuits, and complaints about the Turney Center, and discussed the possibility of Plaintiff being transferred to another TDOC facility. Not surprisingly, the parties present different takes on the context of the interview. Defendants contend that Miller and Sherrell attempted to facilitate a solution to Plaintiff's issues at the Turney Center and a transfer to another facility of his own choosing. *See* Defendants' Memorandum in Support (Docket Entry No. 203) at 11; Affidavit of Sherrell (Docket Entry No. 202-5). In contrast, Plaintiff paints a picture of the interview being an attempt to coerce him into dropping his First Amendment activities and coerce him into agreeing to a transfer, a transfer that

he believed was going to occur regardless of his wishes because of his First Amendment activities. *See* Plaintiff's Declaration (Docket Entry No. 160) at ¶ 8; Plaintiff's Response to Statement of Undisputed Facts (Docket Entry No. 236) at ¶¶ 19-27.

Initially, the Court notes that Plaintiff has no evidence that Defendants Miller and Sherrell did anything other than interview him and provide a report of their interview. He acknowledges having no evidence that they personally ordered his transfer to the BCCX or that they possessed any authority to issue such an order. *See* Plaintiff's Response to Statement of Undisputed Facts at ¶ 45. Again, his contention that he intends to develop supporting facts against these Defendants by questioning them and others at trial, *id.*, is a wholly insufficient basis upon which to establish the existence of genuine issues of material fact.

However, the Court is not required to ignore the obvious, and it is abundantly apparent, and not actually disputed, that Defendants Miller and Sherrell, as special TDOC Agents, played a role in the events that led to and culminated in Plaintiff's transfer from the Turney Center to the BCCX. The ultimate question is whether this role is a sufficient one upon which to find that they violated Plaintiff's constitutional rights by acting in a retaliatory manner against him. In the end, the Court finds that it is not. Based upon the evidence that is before the Court, no reasonable jury could find that Defendants Miller and Sherrell violated Plaintiff's First Amendment rights by their actions.

A prison inmate retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Among these rights is the right to pursue grievances and lawsuits against prison officials. *Pell*, 417 U.S. at 822; *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Thus, prison officials cannot retaliate against a prison

18

inmate based upon the inmate's exercise of his First Amendment rights. *See Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005); *Smith v. Campbell*, 250 F.3d 1032, 1036-37 (6th Cir. 2001); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish that allegations of retaliation rise to the level of a First Amendment claim, Plaintiff must show that: 1) he engaged in protected conduct; 2) a sufficiently serious adverse action was taken against him that would deter a prisoner of "ordinary firmness" from continuing to engage in the protected conduct; and 3) there is a causal connection between the first two elements -- that is, the adverse action was motivated at least in part by Plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 Fed.App'x. 553, 556, 2003 WL 22976618 (6th Cir. Dec. 8, 2003).

Because of the unique context of the prison setting, however, some events that are objectionable to the complaining prisoner simply do not rise to a level of harm necessary to implicate constitutional concern. *See Thaddeus-X,* 175 F.3d at 395 and 398. While an act need not be egregious in order to be adverse, prisoner inmates "may be required to tolerate more than a average citizen." *Id.* at 398. "Routine inconveniences of prison life [ ] do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 Fed.App'x. 493, 503 (6th Cir. 2011).

The United States Supreme Court in *Sandin v. Conner* noted, an inmate's transfer to the general population of another prison is an ordinary incident of prison life. 515 U.S. at 483. *See also Ward v. Dyke*, 58 F.3d 271(6th Cir. 1995) (prison inmates have no right to be confined at any particular prison). The Sixth Circuit has routinely found that prison transfers do not constitute an adverse action. *See King v. Zamiara*, 150 Fed.Appx. 485, 2005 WL 2496478 (6th Cir. Oct. 7, 2005); *Smith v. Yarrow*, 78 Fed.Appx. 529, 543, 2003 WL 22400730 (6th Cir. Oct. 20, 2003); *Friedmann*

*v. Corrections Corp. of Am.*, 11 Fed.Appx. 467, 2001 WL 467990 (6th Cir. Apr. 26, 2001). Nonetheless, in a limited, factually specific situation, a prison transfer may cause sufficient limiting consequences to render the transfer an adverse action. *See Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005). The adverse consequences noted in *Siggers-El* were directly related to the inmate's ability to retain and have access to an attorney for a legal challenge to his criminal conviction. These consequences were so directly related to the inmate's access to the courts that they constituted actions that "would deter a person of ordinary firmness from engaging in protected conduct." 412 F.3d 693, 701-02 (2005). Unlike the inmate in *Siggers-El*, Plaintiff's transfer was not accompanied by any notable factors that would render the transfer adverse. To satisfy the "adverse action" requirement, a prison inmate must show more than *de minimis* harm. *See Ingraham v. Wright,* 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396. The very nature of the prison setting requires that a prison inmate endure actions or events at the hands of prison officials which may not be agreeable to the inmate. Certainly, not all prisons are alike and Plaintiff may not have secured an immediate prison job at the BCCX, but Plaintiff has offered no evidence showing that being housed at the BCCX rose to the level of having a deterrent effect and, thus, rendering the transfer an adverse action. *See Hix v. Tennessee Dep't of Corr.*, 196 Fed.App'x 350, 358 (6th Cir. 2006) (absent aggravating circumstances of the type present in *Siggers-El*, prisoner plaintiff's allegations of retaliatory transfers failed to allege adverse action that would deter a person of ordinary firmness from engaging in constitutionally protected conduct).

Furthermore, in evaluating the showing of the causal link required for a prison retaliation claim, the Court must acknowledge the well-accepted principle that the management of prison facilities is best left to prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987);

*Turner v. Safley*, 482 U.S. 78, 89 (1987); *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). The daily operation of a prison facility requires constant and vigilant attention to issues of security, good order, and the discipline of an institution, and the discretion of how to deal with these and other related issues is best left to the expertise of prison officials. *See Thornburgh v. Abbott*, 490 U.S. 401, 404-08, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Clearly, Defendant Miller and Sherrell interviewed Plaintiff because he had expressed dissatisfaction via his grievances and other written complaints with the staff at the Turney Center and they facilitated his transfer to the BCCX. However, imputing a retaliatory motive to their actions is unwarranted in the absence of other evidence. Prison officials may legitimately acknowledge that an inmate has engaged in protected activity yet still engage in the routine prison administrative matters, such as interviewing an inmate and making transfer decision regarding that inmate, without transforming their actions into unlawful and unconstitutional conduct. *Ward, supra; Jewell v. Leroux*, 20 Fed.App'x 375, 378 (6th Cir. 2001).

## RECOMMENDATION

For the foregoing reasons, the undersigned RESPECTFULLY RECOMMENDS that :

1) Plaintiff's motion for partial summary judgment (Docket Entry No. 158) be DENIED; and

2) Defendants' motion for summary judgment (Docket Entry No. 201) be GRANTED and this action be DISMISSED as to all claims and defendants.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a

waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any party opposing the objections must file and serve a written response within fourteen days of service of the objections. Local Rule 72.03(b)(2).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge